No. 23-3480

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

BRYAN TESSANNE AND RICHARD BRIMER, ON THEIR OWN BEHALF
AND ON BEHALF OF THE CLASS SIMILARLY SITUATED,

*Plaintiffs-Appellants*,

v.

CHILDREN'S HOSPITAL MEDICAL CENTER OF AKRON,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Northern District of Ohio
Case No. 5:22-cv-354

_____

## BRIEF OF APPELLEE
## CHILDREN'S HOSPITAL MEDICAL
## CENTER OF AKRON

_____

Mark I. Wallach
Nicholas R. Oleski
MCCARTHY, LEBIT, CRYSTAL
 & LIFFMAN CO., LPA
1111 Superior Avenue E., Suite 2700
Cleveland, Ohio 44114
(216) 696-1422

*Counsel for Children's Hospital
Medical Center of Akron*

November 3, 2023

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 23-3480              Case Name: Bryan Tessanne et al. v. Children's Hos

Name of counsel: Mark I. Wallach

Pursuant to 6th Cir. R. 26.1, Children's Hospital Medical Center of Akron
Name of Party

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on              November 3, 2023              the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Mark I. Wallach

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Table of Contents ......................................................................i

Table of Authorities................................................................ iii

Statement Regarding Oral Argument ...................................................viii

Statement of Jurisdiction................................................................1

Introduction ........................................................................2

Statement of the Issues................................................................4

Statement of the Case ................................................................6

    A.    The CMS Rule ................................................................6

    B.    Plaintiffs' Employment at the Hospital................................7

    C.    Procedural History ................................................................8

Summary of the Argument ................................................................11

Standards of Review................................................................12

Argument................................................................13

I.    Plaintiffs lack standing to sue for declaratory and injunctive relief................................................................13

II.    The district court did not err in dismissing Plaintiffs' complaint. ................................................................18

    A.    The district court lacked subject-matter jurisdiction...........18

    B.    Even if it were a federal actor, the Hospital cannot be held liable for damages. ................................................................31

    C.    Plaintiffs did not state plausible claims for relief. ...............33

III.    The district court did not abuse its discretion in denying leave to amend. ................................................................34

Conclusion ......................................................................... 38

Certificate of Compliance ....................................................... 39

Certificate of Service .............................................................. 40

Designation of Relevant District Court Documents ............................. 41

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ACLU v. Nat'l Sec. Agency,*
   493 F.3d 644 (6th Cir. 2007)........................................................ 14, 15

*Armatas v. Pulmonary Physicians, Inc.,*
   No. 21-3926, 2021 U.S. App. LEXIS 35836
   (6th Cir. Dec. 3, 2021) ................................................................ 20, 21

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................... 25

*Begala v. PNC Bank, Ohio, Nat'l Ass'n,*
   214 F.3d 776 (6th Cir. 2000) ............................................................. 36

*Biden v. Missouri,*
   142 S. Ct. 647 (2022) (per curiam) ................................................. 6, 23

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
   403 U.S. 388 (1971) ........................................................................... 31

*Boulton v. Swanson,*
   795 F.3d 526 (6th Cir. 2015) ............................................................. 13

*Burgess v. Fischer,*
   735 F.3d 462 (6th Cir. 2013) ............................................................. 33

*Changizi v. Dep't of Health & Human Servs.,*
   82 F.4th 492 (6th Cir. 2023) ................................................. 26, 27, 37

*Ciraci v. J.M. Smucker Co.,*
   62 F.4th 278 (6th Cir. 2023) ....................................................... *passim*

{01953066-1}

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................ 15, 16

*Cleveland Branch, NAACP v. City of Parma*,
    263 F.3d 513 (6th Cir. 2001) .............................................................. 14

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001) ............................................................................ 31

*Drutis v. Rand McNally & Co.*,
    499 F.3d 608 (6th Cir. 2007) ............................................................. 15

*Egbert v. Boule*,
    142 S. Ct. 1793 (2022) ....................................................................... 31

*Feit v. Ward*,
    886 F.2d 848 (7th Cir. 1989) ............................................................. 17

*Fieger v. Ferry*,
    471 F.3d 637 (6th Cir. 2006) ............................................................. 16

*Gafurova v. Whitaker*,
    911 F.3d 321 (6th Cir. 2018) ............................................................. 19

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
    527 U.S. 308 (1999) ........................................................................... 32

*Hart v. Hillsdale Cty.*,
    973 F.3d 627 (6th Cir. 2020) ............................................................. 28

*Houchens v. Beshear*,
    850 F. App'x 340 (6th Cir. 2021) ....................................................... 21

*Kanuszewski v. Mich. HHS*,
    927 F.3d 396 (6th Cir. 2019) ....................................................... 16, 18

*Kentucky v. Yellen*,
    54 F.4th 325 (6th Cir. 2022) ............................................................. 16

iv

*Kleiber v. Honda of Am. Mfg.*,
  485 F.3d 862 (6th Cir. 2007)............................................................................30

*Kuyat v. BioMimetic Therapeutics, Inc.*,
  747 F.3d 435 (6th Cir. 2014)............................................................................34

*La. Sch. Emples. Ret. Sys. v. Ernst & Young, LLP*,
  622 F.3d 471 (6th Cir. 2010)............................................................................35

*Louisiana v. Becerra*,
  20 F.4th 260 (5th Cir. 2021) ..............................................................................6

*Louisiana v. Becerra*,
  571 F. Supp. 3d 516 (W.D. La. 2021)................................................................6

*LPP Mortg., Ltd. v. Brinley*,
  547 F.3d 643 (6th Cir. 2008)............................................................................14

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982)..........................................................................................28

*Missouri v. Biden*,
  571 F. Supp. 3d 1079 (E.D. Mo. 2021)..............................................................6

*Missouri v. Biden*,
  83 F.4th 350 (5th Cir. 2023) ............................................................................26

*Murthy v. Missouri*,
  ___ S. Ct. ___, 2023 WL 6935337 (Oct. 20, 2023) (Mem.) .................26

*Newman-Green, Inc. v. Alfonzo-Larrain*,
  490 U.S. 826 (1989)..........................................................................................14

*Newsome v. Batavia Local Sch. Dist.*,
  842 F.2d 920 (6th Cir. 1988)............................................................................14

*Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*,
  700 F.3d 829 (6th Cir. 2012)............................................................................34

v

*Payne v. Hook*,
74 U.S. 425 (1868)..............................................................32

*Savage v. Gee*,
665 F.3d 732 (6th Cir. 2012)...........................................17

*Scottsdale Ins. Co. v. Flowers*,
513 F.3d 546 (6th Cir. 2008)...........................................13

*Seibert v. Baptist*,
594 F.2d 423 (5th Cir. 1979)...........................................21

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976)...........................................................14

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950).........................................................19

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998).............................................................1

*Sutton v. St. Jude Med. S.C., Inc.*,
419 F.3d 568 (6th Cir. 2005)...........................................14

*Sw. Williamson Cty. Cmty. Ass'n v. Slater*,
173 F.3d 1033 (6th Cir. 1999).........................................33

*Toledo v. Jackson*,
485 F.3d 836 (6th Cir. 2007)...........................................20

*Town of Chester v. Laroe Estates, Inc.*,
581 U.S. 433 (2017).........................................................18

*Wayside Church v. Van Buren Cty.*,
847 F.3d 812 (6th Cir. 2017)....................................12, 13

*Wells Fargo Bank, N.A. v. Fid. Nat'l Title Ins. Co.*,
No. 19-17332, 2021 WL 5150044 (9th Cir. Nov. 5, 2021).................36

vi

*Youkhanna v. City of Sterling Heights,*
  934 F.3d 508 (6th Cir. 2019) ........................................................ 20

*Zaluski v. United Am. Healthcare Corp.,*
  527 F.3d 564 (6th Cir. 2008) ........................................................ 13

**Statutes**

28 U.S.C. § 1331 .................................................................... 1, 19

**Other Authorities**

*Guidance for the Interim Final Rule - Medicare and Medicaid Programs;
  Omnibus COVID-19 Health Care Staff Vaccination,* Centers for
  Medicare & Medicaid Services,
  https://www.cms.gov/files/document/qso-22-09-all-injunction-lifted-
  expired.pdf (Jan. 14, 2022) ............................................. 23, 24, 30

**Rules**

6 Cir. R. 32.1(b) ..................................................................... 25

Fed. R. App. P. 34(a)(2) ............................................................ vii

Fed. R. Civ. P. 15(a)(2) .............................................................. 35

**Treatises**

1 Joseph Story, *Commentaries on Equity Jurisprudence: As Administered
  in England and America* (1836) .................................................. 32

**Regulations**

86 Fed. Reg. 61561 (Nov. 5, 2021) ............................................... 6

88 Fed. Reg. 36485 (June 5, 2023) ......................................... 7, 17

{01953066-1}

## STATEMENT REGARDING ORAL ARGUMENT

Children's Hospital Medical Center of Akron does not believe oral argument is appropriate or would be beneficial in this case. Oral argument is unnecessary if the "appeal is frivolous" or "the dispositive issue or issues have been authoritatively decided." Fed. R. App. P. 34(a)(2). Both are true here. The dispositive issue is whether the federal government's COVID-19 vaccine policies make private actors—like the Hospital—federal actors. Earlier this year, a unanimous panel of this Court held that the federal government's policies do not do so and affirmed the dismissal of the plaintiffs' complaint. *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278 (6th Cir. 2023). That published decision is binding here. Because the dispositive issue has been authoritatively decided (in a case filed by the *same* lawyers that represent the appellants here) and this appeal, as a result, is frivolous, oral argument is unnecessary.

{01953066-1}

# STATEMENT OF JURISDICTION

Plaintiffs tried to invoke the jurisdiction of the district court under federal-question jurisdiction. 28 U.S.C. § 1331. The district court found that it lacked subject-matter jurisdiction, and it dismissed Plaintiffs' complaint without prejudice. Plaintiffs timely appealed that ruling. This Court has jurisdiction of Plaintiffs' appeal to review whether the district court's finding that it lacked subject-matter jurisdiction was correct. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).

{01953066-1}

## INTRODUCTION

Two employees of Children's Hospital Medical Center of Akron (the "Hospital"), Richard Brimer and Bryan Tessanne (jointly, "Plaintiffs"), allegedly sought religious exemptions from the Hospital's COVID-19 vaccine policy. After the Hospital considered and refused these exemptions, and then terminated Plaintiffs' employment, they filed a federal lawsuit on behalf of a putative class, and alleged that the Hospital's policy violated the First Amendment to the United States Constitution. But the Hospital is an indisputably private actor; it is not an arm of a local, state, or federal government. Nonetheless, Plaintiffs alleged that, due to the Hospital's compliance with mandates and guidance set forth by the federal government, the Hospital became a federal actor.

But Plaintiffs do not even have standing to bring their claims for declaratory and injunctive relief. They filed suit after the Hospital terminated their employment. A plaintiff's standing to seek injunctive and declaratory relief, however, depends on the likelihood of future harm—not past harm. Thus, when the plaintiff has lost the employment or position that subjected the plaintiff to the rule of which he complains, he lacks

2

standing to sue for declaratory and injunctive relief. That is exactly what Plaintiffs have tried to do here, and, as a result, they lack standing.

On the merits, as well, Plaintiffs' claims fall short. The district court correctly rejected Plaintiffs' theory that the Hospital is a federal actor, and it dismissed their complaint for lack of subject-matter jurisdiction. As a panel of this Court held recently, in a case brought by Plaintiffs' counsel, "[t]hat Smucker's acted in compliance with a federal law and that Smucker's served as a federal contractor—the only facts alleged in the claimants' complaint—do not by themselves make the company a government actor." *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 280 (6th Cir. 2023). So, too, here. The federal government's COVID-19 policies did not transform the Hospital into a federal actor, and private actors—like the Hospital—are not subject to the Constitution's limitations on government action, dooming Plaintiffs' First Amendment claim.

Even if the Hospital were a federal actor and subject to the federal Constitution, Plaintiffs' claim would still fail. Their claim for declaratory and injunctive relief fails for lack of standing, and their damage claim is barred by the *Bivens* line of cases. The Supreme Court's *Bivens* case law makes clear that the Constitution is not a general tort law. Plaintiffs

{01953066-1}

cannot sue the Hospital for damages based on its alleged violation of their First Amendment rights. As the panel in *Ciraci* explained, "the Supreme Court has rejected *Bivens* claims 'against private corporations acting under color of federal law.'" 62 F.4th at 287 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001)). Thus, even if they could show the Hospital was a federal actor, Plaintiffs do not have an implied cause of action under *Bivens* to sue the Hospital. Their claims utterly fail.

Nor did the district court err in denying Plaintiffs leave to amend their complaint. They requested leave in a single sentence in their opposition to the Hospital's motion to dismiss. Under settled Sixth Circuit law, that request is insufficient.

The district court properly dismissed Plaintiffs' complaint and denied them leave to amend. This Court should affirm that judgment.

## STATEMENT OF THE ISSUES

1.    Plaintiffs must have standing at the time they file suit. When parties seek declaratory and injunctive relief, allegations of past injuries do not give them standing to sue. Plaintiffs here seek declaratory and injunctive relief, but their alleged injuries are past injuries: that they

4

were fired before they filed suit. Do Plaintiffs have standing to sue for declaratory and injunctive relief?

2.    The Constitution does not apply to the conduct of private parties. The Hospital is a private party—not a governmental entity. Did it become a federal actor subject to the Constitution by complying with governmental regulations about the COVID-19 vaccine?

3.    The Constitution is not a tort law. Absent a statute creating a cause of action, federal courts do not imply causes of actions for alleged Constitutional violations under the *Bivens* doctrine. Even if the Hospital were a federal actor, should this Court extend *Bivens* and permit Plaintiffs to sue the Hospital for damages?

4.    Although the Federal Rules of Civil Procedure mandate that parties be freely given leave to amend their pleadings, that mandate does not apply when a party does not separately move for leave to amend and makes its request for leave in a single, conclusory sentence opposing a motion to dismiss. Plaintiffs did not separately move for leave to amend and asked in a single sentence for leave to amend—without explaining what new allegations they would make—if the district court found their

complaint insufficient. Did the district court abuse its discretion in deny-

ing leave to amend?

## STATEMENT OF THE CASE

### A.     The CMS Rule

In November 2021, the Secretary of Health and Human Services

issued an interim final rule that amended the existing conditions of par-

ticipation in Medicare and Medicaid. The interim final rule (the "CMS

Rule") required that certain healthcare facilities ensure that their cov-

ered staff were vaccinated against COVID–19. 86 Fed. Reg. 61561,

61616–61627 (Nov. 5, 2021). "The rule requires providers to offer medical

and religious exemptions, and does not cover staff who telework full-

time." *Biden v. Missouri*, 142 S. Ct. 647, 651 (2022) (per curiam) (citing

86 Fed. Reg. 61571-61572).

Shortly after the CMS Rule was implemented, multiple States filed

suit and sought to enjoin the Rule. Two district courts enjoined it. *Loui-

siana v. Becerra*, 571 F. Supp. 3d 516 (W.D. La. 2021); *Missouri v. Biden*,

571 F. Supp. 3d 1079 (E.D. Mo. 2021). And the Fifth and Eighth Circuits

refused to stay those injunctions pending the government's appeal. *Lou-

isiana v. Becerra*, 20 F.4th 260 (5th Cir. 2021); Order, *Missouri v. Biden*,

6

No. 21-3725 (8th Cir. Dec. 13, 2021). On January 13, 2022, the United States Supreme Court granted the government's applications to stay those injunctions. *Biden*, 142 S. Ct. at 650. Thus, between November 29 and January 13, 2022, the CMS Rule was enjoined.

In summer 2023, while this appeal was pending, CMS published a final rule that ended the requirements for healthcare staff vaccination. 88 Fed. Reg. 36485 (June 5, 2023).

## B.    Plaintiffs' Employment at the Hospital

The Hospital "is a pediatric acute care hospital in Northeast Ohio that provides care to infants, children, adolescents, young adults, and some older adults." (R. 1, Compl. ¶ 17, PageID 5). Plaintiffs Tessanne and Brimer were employees of the Hospital. (*Id.* ¶¶ 15-16, PageID 4-5). In late 2021, the Hospital adopted a policy requiring its employees to obtain a COVID-19 vaccination. (*Id.* ¶ 23, PageID 6). The Hospital permitted employees to request accommodations for religious and health reasons. (*Id.* ¶ 24, PageID 6).

Plaintiffs alleged that they each "have sincerely held religious beliefs that prevent them from receiving the SARS-CoV-2 injections." (*Id.* ¶ 36, PageID 8). For that reason, they both alleged that they "submitted

7

a request for reasonable accommodations due to [their] Christian faith."
(*Id.* ¶¶ 15-16, PageID 4-5). According to Plaintiffs, the Hospital denied
those accommodations and, on January 11, 2022—while the CMS Rule
was enjoined—suspended all unvaccinated employees, including Plain-
tiffs. (*Id.* ¶¶ 7, 15-16, PageID 4-5). In so doing, Plaintiffs alleged the Hos-
pital, while the CMS Rule was enjoined, informed all suspended employ-
ees that they would be terminated at the end of January if they remained
unvaccinated. (*Id.* ¶ 7, PageID 4).[1] The Hospital then terminated Plain-
tiffs "on January 27, 2022" and informed them that they would "lose
[their] position officially on February 28, 2022" if they did not get vac-
cinated. (*Id.* ¶¶ 7, 15-16, PageID 4-5).

## C.    Procedural History

Plaintiffs filed suit on March 3, 2022—over a month after they were
terminated and a week after they "officially" lost their positions at the
Hospital. They did not sue the federal government; instead, they sued

---

[1] Plaintiffs spend most of their brief complaining that the district
court drew an impermissible inference that the Hospital would have
maintained its vaccination policy and terminated Plaintiffs had the Su-
preme Court not stayed the injunctions of the CMS Rule. (*E.g.*, Pls.' Br.
13). But that is exactly what they pled: the Hospital suspended them and
informed them that they would be terminated while the Rule was en-
joined.

their former employer: the Hospital. While they asked for a panoply of remedies, their only cause of action was for a declaratory judgment and injunctive relief, under the Declaratory Judgment Act, due to the Hospital's alleged violation of their First Amendment rights. (*See id.* ¶¶ 34-47, PageID 8-10). Among other forms of relief, they sought a declaration that the Hospital violated the First Amendment by allegedly denying requests for "religious exemptions" to the vaccine requirement and an injunction "enjoining [the Hospital] from terminating or placing on indefinite unpaid leave any employee who has a religious basis for seeking an accommodation." (*Id.* ¶¶ a. & b., PageID 10). Although they pleaded that the Hospital is a "private entity" not subject to the Constitution, they alleged that the Hospital is a "federal actor" because of the "mandates and guidance set forth by the Federal Government." (*Id.* ¶ 27, PageID 6).

Even though Plaintiffs only purported to state a claim for declaratory and injunctive relief, their complaint sought much more than that. They purported to bring this claim on behalf of a "class of others similarly situated" (*id.*, PageID 1), and in their prayer for relief, asked the district court to award them and their proposed class "damages" and attorneys' fees. (*Id.* ¶¶ c. & d., PageID 11).

The Hospital moved to dismiss Plaintiffs' complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (R. 9, Mot. to Dismiss, PageID 35). It explained that, because the Hospital is not a federal actor, the district court lacked subject-matter jurisdiction and Plaintiffs failed to allege plausibly that the Hospital is a federal actor. (*Id.*). Plaintiffs opposed the Hospital's motion. (R. 12, Opp. to Mot. Dismiss, PageID 53). In addition, in a single sentence in their opposition, Plaintiffs requested leave to amend if the district court "finds Plaintiffs' Complaint deficient for any reason." (*Id.*, PageID 64). While the motion to dismiss was pending before the district court, the Hospital filed a notice of additional authority to alert the district court to this Court's recent decision in *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278 (6th Cir. 2023). (R. 16, Notice of Additional Authority, PageID 83). Plaintiffs did not reply to that notice.

The district court granted the Hospital's motion to dismiss for lack of subject-matter jurisdiction and denied as moot its Rule 12(b)(6) motion. (R. 17, Mem. Op. & Order, PageID 108). Because it found that Plaintiffs did not state viable federal claims, the district court found that it lacked

10

subject-matter jurisdiction, and it dismissed Plaintiffs' complaint without prejudice. (*Id.*); (*see* R. 18, Judgment, PageID 109).

Plaintiffs then timely filed their appeal. (R. 19, Notice of Appeal, PageID 110).

## SUMMARY OF THE ARGUMENT

I.  Plaintiffs lack standing to sue for declaratory and injunctive relief. To have standing to seek federal declaratory relief, Plaintiffs must demonstrate actual present harm or the significant possibility of future harm. Past injuries alone are not sufficient to confer standing. Plaintiffs only allege past injuries; namely, that they were terminated before they filed suit. Those allegations are insufficient to demonstrate standing to sue for declaratory and injunctive relief.

II.A. The district court lacked subject-matter jurisdiction. Plaintiffs failed to allege plausible facts to show that the Hospital is a federal actor. Absent such allegations, there is no viable federal claim for relief, meaning the district court lacked subject-matter jurisdiction.

II.B. The *Bivens* doctrine bars Plaintiffs' claims for relief. The Supreme Court's *Bivens* case law makes clear that the Constitution is not a

11

general tort law. Plaintiffs cannot sue the Hospital for damages based on its alleged violation of their First Amendment rights.

II.C. Even if the district court had subject-matter jurisdiction, its judgment should still be affirmed. This Court may affirm on any ground supported by the record. Because the Hospital is not a federal actor, Plaintiffs' claims for alleged constitutional violations necessarily fail to state a claim for relief.

III.  The district court did not abuse its discretion in denying leave to amend. Although Rule 15 instructs courts to "freely give leave" to amend, that liberal policy does not apply to the Plaintiffs' one-sentence request in their opposition brief. Because that was all Plaintiffs submitted to the district court, it acted within its discretion in denying leave to amend.

## STANDARDS OF REVIEW

A.  This Court reviews *de novo* the district court's decision granting the Hospital's motion to dismiss for lack of subject-matter jurisdiction. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017). When "subject matter jurisdiction is challenged under Rule 12(b)(1) … the plaintiff has the burden of proving jurisdiction in order to survive the

{01953066-1}

motion." *Id.* (internal citations omitted). If a defendant—like the Hospital did here—moves to dismiss under Rules 12(b)(1) and 12(b)(6), the court must "consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Id.* (internal citations omitted).

This Court may affirm the district court's dismissal of a plaintiff's claims on any grounds, including grounds not relied upon by the district court. *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

B.  This Court reviews the district court's decision denying leave to amend for an abuse of discretion. *Boulton v. Swanson*, 795 F.3d 526, 537 (6th Cir. 2015). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (*quoting Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003)).

## ARGUMENT

## I.  Plaintiffs lack standing to sue for declaratory and injunctive relief.

Before proceeding to the merits, the Court should question Plaintiffs' standing and, consequently, whether it has subject-matter

13

jurisdiction. "[C]onstitutional standing is always a 'threshold inquir[y] which this court is obligated to consider prior to asserting jurisdiction over [an] appeal.'" *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 922 (6th Cir. 1988) (quoting *Allstate Ins. Co. v. Wayne County*, 760 F.2d 689, 691 (6th Cir. 1985)). Although the Hospital did not raise Plaintiffs' lack of standing below, it is not precluded it from raising it now. *See LPP Mortg., Ltd. v. Brinley*, 547 F.3d 643, 647 (6th Cir. 2008) (explaining that Article III standing is not waivable). Indeed, this Court must find it has jurisdiction "even [if] the parties are prepared to concede it." *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 652 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998)).

Plaintiffs must show at the time they filed suit they had standing to do so.[2] *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) (noting that "the existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed"); *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001) ("The

---

[2] Plaintiffs' class action allegations do not change the standing analysis. Standing is satisfied in a class action if the named plaintiff, not unnamed class members, has standing. *See, e.g.*, *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976); *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005).

14

Supreme Court has consistently held that jurisdiction is tested by the facts as they existed when the action was brought.") (cleaned up). A plaintiff seeking to invoke the jurisdiction of the federal courts "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The "irreducible constitutional minimum of standing contains three requirements: (1) injury in fact, (2) causation, and (3) redressability." *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007) (quotation marks omitted). "'Injury in fact' is a harm suffered by the plaintiff that is 'concrete and actual or imminent, not conjectural or hypothetical.' 'Causation' is 'a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.' 'Redressability' is 'a likelihood that the requested relief will redress the alleged injury.'" *Id.* (quoting S*teel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). In other words, "Article III standing ultimately turns on whether a plaintiff gets something (other than moral satisfaction) if the plaintiff wins." *Drutis v. Rand McNally & Co.*, 499 F.3d 608, 612 (6th Cir. 2007).

15

Plaintiffs lack standing to seek declaratory relief because they are not subject to actual present harm or any future harm. To have standing to seek federal declaratory and injunctive relief,[3] Plaintiffs must "demonstrate actual present harm or the significant possibility of future harm." *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006); *see Kentucky v. Yellen*, 54 F.4th 325, 339 (6th Cir. 2022) ("an injunction cannot be used to redress a purely past injury"). "[A]llegations of past injury alone are not sufficient to confer standing." *Fieger*, 471 F.3d at 643. Thus, when a plaintiff has lost the employment or position that subjected the plaintiff to the rule of which he complains, and it is "'most unlikely' that [the plaintiff] would again be subject to the [rule], no case or controversy of 'sufficient immediacy and reality' was present to allow a declaratory judgment." *Lyons*, 461 U.S. at 104 (quoting *Golden v. Zwickler*, 394 U.S. 103, 109 (1969)).

Plaintiffs allege only past injuries—that they were terminated in violation of the First Amendment. At the time they filed their lawsuit, in early March 2022, the Hospital had already ended their employment: they were terminated on January 27, 2022 and lost their positions on

---

[3] The standing requirements for declaratory and injunctive relief are "the same." *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 406 (6th Cir. 2019).

16

February 28, 2022. (R. 1, Compl. ¶¶ 15-16, PageID 4-5). Thus, at the time they filed suit, they had already suffered the injury of which they complain. And, as former employees of the Hospital, Plaintiffs are no longer affected by the vaccine policies they challenge. Under settled law, they lack standing to sue. *See Savage v. Gee*, 665 F.3d 732, 740-41 (6th Cir. 2012) (affirming the dismissal of a former professor's challenge to a university's policies because he resigned from the faculty after he filed suit, and thus he could not show that he had a reasonable expectation of any imminent enforcement of the challenged policies against him); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (affirming dismissal where a former government employee sought equitable relief in the form of a judgment declaring the defendants' policy as violative of the First Amendment, because the plaintiff was no longer an employee and would not benefit from the relief requested). This is all the more true because the federal government is no longer mandating vaccinations for healthcare providers. *See* 88 Fed. Reg. 36485 (June 5, 2023).

Plaintiffs' allegations of past injury might give them standing to seek damages,[4] but not declaratory and injunctive relief. "The distinction between past and ongoing or future harms is significant because the type of harm affects the type of relief available. Past harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief." *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 406 (6th Cir. 2019). This is significant because "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (cleaned up).

Plaintiffs lack standing to seek declaratory and injunctive relief. Because Plaintiffs lack standing, the district court lacked subject-matter jurisdiction.

## II. The district court did not err in dismissing Plaintiffs' complaint.

### A. The district court lacked subject-matter jurisdiction.

Even if Plaintiffs had Article III standing, they still failed to invoke the district court's subject-matter jurisdiction. They claimed the district

---

[4] As discussed more below, Plaintiffs' damages claim is barred by the *Bivens* line of cases. *See* pp. 31-33 *infra*.

court had jurisdiction under federal-question jurisdiction. (R. 1, Compl. ¶ 12, PageID 4).[5] Under that statute, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs brought a single claim for declaratory judgment under the Declaratory Judgment Act. But because that statute creates a remedy, not a cause of action, Plaintiffs allegations of federal-question jurisdiction—as the district court found—lacked merit.

As explained by the Supreme Court, "[t]he operation of the Declaratory Judgment Act is procedural only," *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (quoting *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937)), and "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction," *id.* "[T]he Declaratory Judgment Act is not a cause of action," and instead "makes available a declaratory judgment '[i]n a case of actual

---

[5] Their complaint also cited 28 U.S.C. § 1343, but Plaintiffs neither here nor in the district court have ever explained how that provision applies to their claim. They have thus forfeited any argument that it applies. *See Gafurova v. Whitaker*, 911 F.3d 321, 327 n.2 (6th Cir. 2018) (arguments not raised below and asserted first in a reply brief are forfeited).

controversy.'" *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (quoting 28 U.S.C. § 2201). "Before 'invoking the Act,' . . . a federal court must 'have jurisdiction already,' under some other federal statute." *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007) (quoting *Heydon v. MediaOne of S.E. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003)).

Plaintiffs never mentioned any federal statute—other than the Declaratory Judgment Act—as providing them a cause of action to give the district court jurisdiction. Although they mention "the First Amendment," they did not cite 42 U.S.C. § 1983—"the federal statute that provides a private cause of action to enforce constitutional rights—and '[t]he Supreme Court has never recognized a cause of action arising directly under the Constitution in a case where § 1983 was available as a remedy.'" *Armatas v. Pulmonary Physicians, Inc.*, No. 21-3926, 2021 U.S. App. LEXIS 35836, at *3 (6th Cir. Dec. 3, 2021) (quoting *Thomas v. Shipka*, 818 F.2d 496, 500 (6th Cir. 1987)). As in *Armatas*, Plaintiffs' references to the First Amendment and the Declaratory Judgment Act do not provide an "independent source of federal jurisdiction," meaning "the district court correctly held that [they] cannot invoke the Declaratory

20

Judgment Act to establish such jurisdiction." *Id.* at *4; *see also Seibert v. Baptist*, 594 F.2d 423, 429 (5th Cir. 1979).

What's more, "[t]o have a claim that 'arises under' federal law the claim cannot be 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Houchens v. Beshear*, 850 F. App'x 340, 342 (6th Cir. 2021) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). Plaintiffs' claim was absolutely devoid of merit. They claim that the Hospital violated the First Amendment but, as a private actor, the Hospital is not constrained by the Constitution. *See Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 280-81 (6th Cir. 2023). *Ciraci*, which considered the President's executive order requiring federal contractors ensure that their employees were fully vaccinated for COVID-19, binds this Court and compels a finding that Plaintiffs' claim was devoid of merit.

That Plaintiffs alleged the Hospital is a federal actor did not give the district court subject-matter jurisdiction. Private actors may be subject to the Constitution if "the specific conduct of which a plaintiff complains is fairly attributable to the government." *Id.* at 281 (cleaned up). Federal courts apply three tests in making this assessment, but "[s]o long

{01953066-1}

as a private company's actions turn on compliance with a state or federal law, that does not by itself make the company a state actor." *Id.*

In *Ciraci*, this Court already held that a private company's vaccine policy does not make it a federal actor under any of the three tests the Supreme Court has outlined. *Id.* at 281-84. That case controls here. The Hospital is not a federal actor under any of those tests.

*Exclusive public function.* "To qualify as a traditional, exclusive public function, the government must have traditionally and exclusively performed the function." *Id.* at 282 (cleaned up). *Ciraci* holds that private employers often "make vaccination a condition of employment." *Id.* Thus, requiring that an employee receive vaccinations is not an exclusively public function.

*Joint action.* "Entwinement may arise when a private entity partners with, directs, or is controlled by government officials." *Id.* Plaintiffs allege nothing of the sort here. They allege that the Hospital receives public funds through Medicare and Medicaid but these types of contractual relationships "by themselves do not create the requisite entwinement." *Id.* at 283.

22

*State compulsion*. "To assess coercion," this Court "examine[s] the specific conduct of which the claimants complain, meaning the denial of their religious exemptions." *Id.* The CMS Rule—just like the federal guidance this Court considered in *Ciraci*—did not tell the Hospital to deny religious exemptions. In fact, it told the Hospital to *grant* religious exemptions to employees who merited an exemption. (*See* R. 1, Compl. ¶ 24, PageID 6); *Biden v. Missouri*, 142 S. Ct. 647, 651 (2022) (per curiam) (citing 86 Fed. Reg. 61571-61572); *Guidance for the Interim Final Rule - Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination* at 3, Centers for Medicare & Medicaid Services, https://www.cms.gov/files/document/qso-22-09-all-injunction-lifted-expired.pdf (Jan. 14, 2022) (requiring healthcare providers to comply with "federal non-discrimination and civil rights laws," including "providing reasonable accommodations" for employees' "sincerely held religious beliefs").[6] That Plaintiffs complain that the Hospital "has exercised its

---

[6] Plaintiffs repeatedly cite CMS' guidance that its goal was "100% employee vaccination." (*E.g.*, Pls.' Br. 3). But they ignore the context of the guidance. CMS' guidance required, among other things, that healthcare providers have "100% of staff" vaccinated "or [ ] been granted a qualifying exemption." *Guidance for the Interim Final Rule - Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff*

23

discretion" under the Rule "stingily" does not make out a case for state compulsion. *Ciraci*, 62 F.4th at 283-84. "As in *Blum*, the President's Executive Order gave Smucker's discretion to decide which of its employees merited religious exemptions. When Smucker's exercised that discretion, the government did not coerce it." *Id.* at 283-84.

But, again as *Ciraci* recognized, a more basic "principle—that compliance with federal law or status as a federal contractor by itself does not make a private entity a public one—cuts the heart out of claimants' case. At most, Smucker's required claimants to vaccinate themselves in accordance with the President's Executive Order." *Id.* at 286. Just as in that case, all Plaintiffs allege is that the CMS Rule "provide[s] such significant encouragement that [the Hospital's] actions regarding the SARS-CoV-2 injection mandates and exemptions are deemed in law to be that of the government." (R. 1, Compl. ¶ 6, PageID 3) (emphasis omitted). *Ciraci* makes clear that is not enough: the Hospital "did not become a state

---

*Vaccination* at 4, Centers for Medicare & Medicaid Services, https://www.cms.gov/files/document/qso-22-09-all-injunction-lifted-expired.pdf (Jan. 14, 2022). CMS' guidance thus reflected the federal government's view that all staff be either vaccinated or been granted an exemption.

24

actor merely by complying with a generally applicable law." 62 F.4th at 284.

Plaintiffs' attempts to distinguish *Ciraci* are without merit. In doing so, they point only to *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970). But *Ciraci* already distinguished *Adickes* and explained that it "does not stand for a different rule." 62 F.4th at 286.[7] Nevertheless, Plaintiffs insist—without citing anything in their complaint—that they pleaded "something more than just compliance with 'federal law.'" (Pls.' Br. 23). What that "something more" was is a mystery. They complain that the district court's dismissal on the pleadings "forecloses all *possibility* that the Hospital *may* have been compelled by federal action beyond the Mandate." (Pls.' Br. 25) (emphasis added). They, however, point to nothing in their pleading suggesting this "possibility" happened, and the pleading rules do not open the door to discovery to these (unpleaded) possibilities and maybes. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Regardless, this Court is "limited to only the facts as alleged in the complaint." *Changizi v. Dep't of Health & Human Servs.*, 82 F.4th 492, 496 n.4 (6th

---

[7] Plaintiffs cannot ask a panel of this Court to overrule *Ciraci* or find that it was wrongly decided. *See* 6 Cir. R. 32.1(b).

Cir. 2023). Plaintiffs cite no facts in their pleading about the government's alleged compulsion of the Hospital. In fact, their complaint pled away any claim of some conspiracy between the federal government and the Hospital, and it relied only on the CMS Rule: the Hospital allegedly "implemented its policy and terminated Plaintiffs according to the mandates and guidance set forth by the Federal Government." (R. 1, Compl. ¶ 27, PageID 6). *Ciraci* holds that simple compliance with a governmental rule—which is all Plaintiffs allege—does not constitute government action.

*Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023),[8] does not compel a different finding. In that case, private individuals and entities whose speech was "stifled" by various social media platforms sued the federal government, not the social media platforms, on the theory that the government pressured the platforms "through private communications and legal threats." *Id.* at 359. Plaintiffs theorize that "on the information gathered from" this case—which related to communications between the

---

[8] Plaintiffs cite the Fifth Circuit's earlier opinion in this case, but the Fifth Circuit withdrew that opinion and substituted this one for it. The Supreme Court recently granted certiorari and stayed the injunction the Fifth Circuit modified. *Murthy v. Missouri*, ___ S. Ct. ___, 2023 WL 6935337 (Oct. 20, 2023) (Mem.).

federal government and social media platforms, not healthcare providers—they "believe that federal officials may have done 'something more' here." (Pls.' Br. 21-22). Again, Plaintiffs' belief is untethered from their allegations. As this Court has found elsewhere, its review "is confined to the allegations as they appear in the complaint," not the "existence of evidence that arose in cases not before" it. *Changizi v. Dep't of Health & Human Servs.*, 82 F.4th 492, 498 (6th Cir. 2023). And the absence of any allegations of any illicit communications or coordination between the government and the Hospital forecloses Plaintiffs' claim for relief.

Their other arguments make little sense. They claim the district court drew two inferences against them: (1) that because the CMS Rule was enjoined when the Plaintiffs were suspended "there was no rule of conduct imposed by the government for the Hospital to follow," (R. 17, Mem. Op. & Order, PageID 105) (cleaned up); (*see* Pls.' Br. 13-14), and (2) "the Hospital did not engage in the meaningful review process of Plaintiffs' exemption applications required by the Mandate" (R. 17, Mem. Op. & Order, PageID 106); (*see* Pls.' Br. 16-17). These alleged inferences do not matter, and Plaintiffs' arguments are nonsense. As best the Hospital can tell, Plaintiffs, on the one hand, argue that the Hospital is a federal

27

actor because it followed the CMS Rule; on the other, they argue that the Hospital is a federal actor because it did *not* follow the Rule. Neither argument has merit. *See Ciraci*, 62 F.4th at 284 (compliance with federal law does not make private actor a federal one); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940 (1982) (non-compliance with state law shows private—not government—action).

Even if the district court did draw inferences against Plaintiffs, it did not err in doing so. At the motion to dismiss stage, a district court may not draw inferences against the non-moving party "unless it is the only plausible conclusion that can be reached on these facts." *Hart v. Hillsdale Cty.*, 973 F.3d 627, 638 (6th Cir. 2020). The district court found that—based on Plaintiffs' own pleading—the Hospital "implemented" its vaccination policy, by suspending employees, on January 11, 2022, "which predates the Supreme Court's lifting of the injunction" by two days. (R. 17, Mem. Op. & Order, PageID 105). Said differently, the district court found that "there was no 'rule of conduct imposed by the government' for the Hospital" when it implemented its policy. (*Id.*) (citing *Lugar*, 457 U.S. at 937). Moreover, as Plaintiffs alleged and the district court found, the Hospital's policy departed from the CMS Rule by, among

28

other ways, requiring employees to be vaccinated a month before the CMS Rule did. (*See* R. 1, Compl. ¶¶ 3-4, Page ID 3) (alleging that the Hospital required vaccinations by January 11, but the government required vaccinations by February 14). These were not improper inferences, but instead were the only plausible conclusions that could be drawn from Plaintiffs' allegations.

Likewise, Plaintiffs' allegations about the Hospital's alleged failure to engage "in a meaningful interactive process" do not show government action. (R. 1, Compl. ¶ 26, PageID 6). The district court found that "Plaintiffs claim that the Hospital's Policy was in contravention of the [Rule] because the Hospital did not engage in the meaningful review process of Plaintiffs' exemption applications required by the [Rule]." (R. 17, Mem. Op. & Order, PageID 106). Plaintiffs say that this is error because they never (supposedly) alleged that the Rule "required a meaningful review process." (Pls.' Br. 16). Not so. The CMS guidance they referenced in the *first* paragraph of their complaint (*see* R. 1 Compl. 1 n.1, PageID 2),[9]

---

[9] Because Plaintiffs cited and repeatedly referenced the CMS Rule in their complaint, it became part of the pleadings and could be considered by the district court. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

29

explicitly required healthcare providers to "comply with applicable federal non-discrimination and civil rights laws and protections, including providing reasonable accommodations to individuals who are legally entitled to them because they have a disability or *sincerely held religious beliefs*, practices, or observations that conflict with the vaccination requirement." *Guidance for the Interim Final Rule - Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination* at 3, Centers for Medicare & Medicaid Services, https://www.cms.gov/files/document/qso-22-09-all-injunction-lifted-expired.pdf (Jan. 14, 2022) (emphasis added). Those laws require this interactive process Plaintiffs claim the Hospital did not follow. *See, e.g.*, *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007). Thus, the CMS Rule required all healthcare providers, including the Hospital, to engage in this interactive process when granting accommodations or exemptions to the vaccination policy. Boiled down, as the district court observed, Plaintiffs alleged that the Hospital did not follow this requirement. That—the failure to follow the federal rule—shows private action, not government action, as the district court correctly held. (R. 17, Mem. Op. & Order, PageID 106) (citing *Lugar*, 457 U.S. at 940).

30

Even if the district court did draw impermissible inferences against Plaintiffs, they do not explain how those inferences warrant reversal. And they do not. The bottom line is Plaintiffs did not come close to pleading that the Hospital is a federal actor. Absent plausible allegations that it is one or that some other federal statute—other than the Declaratory Judgment Act—provides a jurisdictional hook, the district court lacked subject-matter jurisdiction. Plaintiffs alleged neither. This Court should affirm the district court's judgment.

### B.    Even if it were a federal actor, the Hospital cannot be held liable for damages.

The *Bivens* line of cases bars Plaintiffs' claims for damages and other affirmative relief. That doctrine implied a cause of action for damages against federal officials for violating the Fourth Amendment. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). But extending *Bivens* is "disfavored," *Egbert v. Boule*, 142 S. Ct. 1793, 1803, 1805-06 (2022), and the Supreme Court has rejected *Bivens* claims "against private corporations acting under color of federal law," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001). Thus, Plaintiffs cannot bring an implied cause of action for damages against the Hospital.

That Plaintiffs claim they are only seeking declaratory and injunctive relief does not save their claims. This Court has already flagged that when "claimants seek more than a prohibitory injunction" by seeking "reinstatement and other affirmative relief," it "is not clear whether, as a matter of historical equitable practice, [federal courts] may infer, imply, or create a cause of action for such relief." *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 287 (6th Cir. 2023). Plaintiffs cite no case that permits this Court to imply any such cause of action, and historical equitable practice does not permit this type of action. Under the equitable principles administered by American courts,[10] injunctive relief was available where "a wrong is done, for which there is no plain, adequate, and complete remedy in the Courts of Common Law." 1 Joseph Story, *Commentaries on Equity Jurisprudence: As Administered in England and America* 53 (1836); *see Payne v. Hook*, 74 U.S. 425, 430 (1868) (where a court "ha[s] jurisdiction to hear and determine th[e] controversy, . . . . [t]he absence of a complete and adequate remedy at law, is the only test of equity jurisdiction").

---

[10] Federal courts may not "create remedies previously unknown to equity jurisprudence." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 332 (1999).

{01953066-1}

Plaintiffs have other remedies available at law. They could have brought, but did not bring various claims for relief under Title VII or other similar statutes. While the Hospital of course disputes whether those claims would have had any merit, those claims were available to Plaintiffs. Because they were, there is no need for this Court to imply a cause of action under the Constitution that would allow claimants to seek *Bivens*-type relief.

## C.     Plaintiffs did not state plausible claims for relief.

Even if this Court were to find the district court had subject-matter jurisdiction, the Court should still affirm the dismissal of Plaintiffs' complaint. This Court may affirm the district court's judgment "on any grounds supported by the record." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (quotations omitted); *Sw. Williamson Cty. Cmty. Ass'n v. Slater*, 173 F.3d 1033, 1036 (6th Cir. 1999). Below, the Hospital moved to dismiss for failure to state a claim, (R. 9, Mot. to Dismiss, PageID 35), which the district court denied as moot, (R. 17, Mem. Op. & Order, PageID 108). If this Court were to find that the district court had subject-matter jurisdiction, it should still affirm the district court's judgment, on alternate grounds, and remand with instructions that the district court

33

dismiss this action with prejudice. *See Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 844 (6th Cir. 2012) (stating that the "default rule" is that a dismissal under Rule 12(b)(6) is with prejudice).

As outlined above, the jurisdictional and merits issues are intertwined. In fact, Plaintiffs admit that the issue before the Court "is whether the First Amendment provides Plaintiffs with a cause of action against the Hospital." (Pls.' Br. 7) (quotations omitted). And, at bottom, Plaintiffs fail to state plausible claims that the Hospital is a federal actor. Just as in *Ciraci*, this Court should find that Plaintiffs failed to state plausible claims for relief, and it should affirm the district court's dismissal of this action. 62 F.4th 278, 279 (6th Cir. 2023).

## III. The district court did not abuse its discretion in denying leave to amend.

Plaintiffs' single-sentence, summary request in their opposition to the motion to dismiss for leave to amend their complaint is inadequate. "Although FRCP 15 instructs courts to 'freely give leave' to amend, that liberal policy does not apply to the plaintiffs' one-sentence request." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014). As in *Kuyat*, all Plaintiffs did to support their request for leave to amend

34

was, in a single sentence in their opposition brief, "request leave to amend the Complaint to correct any error identified by the Court in the pleading." (R. 12, Opp. to Mot. Dismiss, PageID 64). They did not attach a proposed amended pleading, explain what new facts they could plausibly allege, or even file a separate motion requesting leave to amend.[11] The district court did not err by following well-settled case law from this Court that Plaintiffs' cursory and unsupported request for leave did not warrant granting leave to amend.

That Plaintiffs never even filed a motion asking for leave to amend or provided the district court with a proposed amended pleading is also fatal to their claims on appeal that the district court erred in not allowing them to amend. *See La. Sch. Emples. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010). "A request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" *Id.* (quoting

---

[11] As an aside, although by the time they filed their opposition brief, Plaintiffs needed leave of court to amend, Plaintiffs could have—but did not—amended their pleading as a matter of right after the Hospital moved to dismiss. *See* Fed. R. Civ. P. 15(a)(2) (party may amend its pleading as a matter of course "21 days after service of a motion under Rule 12(b)"). That Plaintiffs did not suggests that Plaintiffs could not actually allege any additional plausible facts.

*Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)).

As this Court has explained, a plaintiff is not entitled "to an advisory

opinion from the Court informing them of the deficiencies of the com-

plaint and then an opportunity to cure those deficiencies." *Begala v. PNC*

*Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (emphasis omit-

ted). By their own admission, that is exactly what Plaintiffs want; they

wanted to "know what the district court" might find insufficient about

their pleading, so they could try and correct the deficiencies. (*See* Pls.' Br.

28). Plaintiffs, however, are not entitled to that advisory opinion.

Plaintiffs cite no relevant case law to the contrary. The only case

they cite is an unpublished decision from the Ninth Circuit. (Pls.' Br. 29)

(citing *Wells Fargo Bank, N.A. v. Fid. Nat'l Title Ins. Co.*, No. 19-17332,

2021 WL 5150044 (9th Cir. Nov. 5, 2021)). In that case, the Ninth Circuit

reversed and remanded because of "newly discovered evidence that is po-

tentially relevant to the underlying claims" and because the district

judge, in a related case, said that she would grant leave to amend if the

Ninth Circuit reversed. *Wells Fargo Bank*, 2021 WL 5150044, at *1. None

of those facts are present here. Plaintiffs do not identify any newly dis-

covered evidence that is relevant to their claims. The "facts" they do say

they could include in an amended pleading are all facts that they knew of at the time they filed suit. (*See* Pls.' Br. 29) (pointing to the Hospital's alleged reliance on Medicare and Medicaid funding and the "implications" of the federal government's vaccination guidance).[12] Anyway, an unpublished Ninth Circuit case is hardly sufficient authority for this Court to reverse the district court, which relied on published decisions from this Court.

Indeed, although the district court cited and relied on *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435 (6th Cir. 2014), Plaintiffs do not discuss how that case is distinguishable. And their arguments in their appellate brief are contrary to this Court's precedent. Neither before the district court nor here have Plaintiffs adequately supported their request for leave to amend.

The district court did not err in denying the Plaintiffs' cursory and unsupported request for leave to amend.

---

[12] Regardless, Plaintiffs alerted the district court to **none** of these alleged facts. Because they failed to do so, they are precluded from doing so now. *See Changizi v. Dep't of Health & Human Servs.*, 82 F.4th 492, 496 n.4 (6th Cir. 2023) ("On review of a dismissal order for facial lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), we are limited to only the facts as alleged in the complaint.").

37

## CONCLUSION

The Court should affirm the district court's judgment.

Dated: November 3, 2023                Respectfully submitted,

*/s/ Mark I. Wallach*
Mark I. Wallach
Nicholas R. Oleski
McCarthy, Lebit, Crystal
  & Liffman Co., LPA
1111 Superior Avenue East
Suite 2700
Cleveland, Ohio 44114
(216) 696-1422
miw@mccarthylebit.com
nro@mccarthylebit.com

*Counsel for Children's Hospital
Medical Center of Akron*

{01953066-1}

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7,432 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(5) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Mark I. Wallach*
Mark I. Wallach

*Counsel for Children's Hospital
Medical Center of Akron*

{01953066-1}

**CERTIFICATE OF SERVICE**

I certify that on November 3, 2023, I filed the foregoing electronically with the Clerk of the United States Court of Appeals for the Sixth Circuit. The Court's ECF system will automatically generate and send by email a Notice of Docket Activity to all registered attorneys currently participating in this case, constituting service on those attorneys.

*/s/ Mark I. Wallach*
Mark I. Wallach

*Counsel for Children's Hospital*
*Medical Center of Akron*

{01953066-1}

# DESIGNATION OF
# RELEVANT DISTRICT COURT DOCUMENTS

| R. | Description | Page ID |
|---|---|---|
| 1 | Complaint | 1-11 |
| 9 | Motion to Dismiss | 35-48 |
| 12 | Opposition to Motion to Dismiss | 53-66 |
| 14 | Reply in Support of Motion to Dismiss | 71-80 |
| 16 | Notice of Additional Authority | 83-85 |
| 16-1 | Exhibit to Notice of Additional Authority | 86-98 |
| 17 | Memorandum Opinion & Order | 99-108 |
| 18 | Judgment | 109 |
| 19 | Notice of Appeal | 110-111 |

{01953066-1}